**[J-16-2016]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, JJ.**


| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 23 MAP 2015 |
| | : | |
| Appellant | : | Appeal from the Order of the Superior |
| | : | Court dated July 24, 2014, |
| | : | Reconsideration Denied September 3, |
| v. | : | 2014, at No. 2086 MDA 2013, |
| | : | Reversing the Judgment of Sentence of |
| | : | the Cumberland County Court of |
| JAMES ARTHUR BALL, III, | : | Common Pleas, Criminal Division, dated |
| | : | October 22, 2013, at No. CP-21-SA- |
| Appellee | : | 0000133-2013. |
| | : | |
| | : | ARGUED: November 17, 2015 |
| | | |
| | | REARGUED: May 10, 2016 |


## OPINION


**JUSTICE WECHT**                                       **DECIDED: September 28, 2016**

James Arthur Ball III was charged with and tried for a summary offense before a

Magisterial District Judge ("MDJ"). The MDJ convicted Ball of a lesser included offense,

implicitly acquitting him of the greater charged offense. Ball appealed his conviction to

the court of common pleas ("the trial court") for a *de novo* trial pursuant to Pa.R.Crim.P.

462(A),[1] whereupon the Commonwealth sought to re-try him on the greater offense.

---

[1]      Rule 462(A) provides:

(A) When a defendant appeals after the entry of a guilty plea or a
conviction by an issuing authority in any summary proceeding, upon the
filing of the transcript and other papers by the issuing authority, the case
(continued…)

The trial court allowed the Commonwealth to try Ball on the original charge, notwithstanding Ball's objection that reinstating that charge violated the double jeopardy clauses of the United States and Pennsylvania Constitutions.

Ball was convicted of the greater offense, and he appealed to the Superior Court. Finding merit in Ball's double jeopardy claim, the Superior Court reversed the trial court and discharged Ball. We granted *allocatur* to determine whether the constitutional prohibition on double jeopardy barred the Commonwealth from reinstating Ball's implicitly-acquitted greater offense. We now hold that the Commonwealth may not prosecute a defendant for the greater offense under these circumstances. Accordingly, we affirm the Superior Court on this issue.

We also granted *allocatur* to decide whether the Superior Court erred when it discharged Ball after having found that the prohibition on double jeopardy precluded his retrial on the greater summary offense. On this issue, we conclude that the Superior Court did err. A MDJ has the authority, *sua sponte*, to convict a defendant of an uncharged, lesser included offense, and the defendant has a right to have that conviction reviewed by a court of record. Therefore, we reverse the Superior Court's order in part, and remand the case to the trial court for a trial *de novo* limited only to the lesser included offense.

The history of this case may be summarized briefly. On January 14, 2013, a Mechanicsburg police officer stopped Ball for speeding. Upon reviewing Ball's driver's history, the officer learned that Ball's license had been suspended as a result of prior convictions for driving-under-the-influence ("DUI"). The officer cited Ball for driving

---

(…continued)
    shall be heard *de novo* by the judge of the court of common pleas sitting
    without a jury.
Pa.R.Crim.P. 462(A).

while operating privileges were suspended related to the DUI convictions ("DUS-DUI"), 75 Pa.C.S. 1543(b)(1).[2]  Ball proceeded to a summary trial before a Cumberland County MDJ, where he was found guilty of driving while his operating privileges were suspended ("DUS"), 75 Pa.C.S. 1543(a),[3] indisputably a lesser included offense of DUS-DUI.  See, e.g., Commonwealth v. Cunningham, 551 A.2d 288 (Pa. Super. 1988) (DUS is a lesser included offense of DUS-DUI).  The MDJ sentenced Ball to thirty days' imprisonment and a $1000 fine.[4]

---

[2]  Subsection 1543(b)(1) provides:

A person who drives a motor vehicle on a highway or trafficway of this Commonwealth at a time when the person's operating privilege is suspended or revoked as a condition of acceptance of Accelerated Rehabilitative Disposition for a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) or the former section 3731, because of a violation of section 1547(b)(1) (relating to suspension for refusal) or 3802 or former section 3731 or is suspended under section 1581 (relating to Driver's License Compact) for an offense substantially similar to a violation of section 3802 or former section 3731 shall, upon conviction, be guilty of a summary offense and shall be sentenced to pay a fine of $500 and to undergo imprisonment for a period of not less than 60 days nor more than 90 days.

75 Pa.C.S. § 1543(b)(1).

[3]  Subsection 1543(a) provides:

Except as provided in subsection (b), any person who drives a motor vehicle on any highway or trafficway of this Commonwealth after the commencement of a suspension, revocation or cancellation of the operating privilege and before the operating privilege has been restored is guilty of a summary offense and shall, upon conviction, be sentenced to pay a fine of $200.

75 Pa.C.S. § 1543(a).

[4]  Ball's sentence exceeded the penalty prescribed by section 1543(a) because he was a habitual offender, and was sentenced accordingly pursuant to 75 Pa.C.S. § 6503(a.1) ("A person convicted of a sixth or subsequent offense under section 1543(a) shall be sentenced to pay a fine of not less than $1,000 and to imprisonment for not less than 30 days but not more than six months.").

Ball appealed to the trial court for a *de novo* trial pursuant to Rule 462(A). Before the trial court, the Commonwealth sought to reinstate the DUS-DUI charge. Ball objected, arguing that allowing the Commonwealth to re-try him on DUS-DUI would subject him to double jeopardy because he had already been acquitted of that charge before the MDJ and was appealing only the DUS conviction. The trial court disagreed. Relying upon Commonwealth v. Lennon, 64 A.3d 1092 (Pa. Super. 2013), the court held that Ball had waived his double jeopardy protections by appealing for a *de novo* trial.

In Lennon, the defendant voluntarily entered a guilty plea to disorderly conduct in exchange for the Commonwealth's withdrawal of the remaining charges. Following his guilty plea, the defendant appealed to the court of common pleas.[5] In response to the defendant's appeal, the Commonwealth sought to reinstate the withdrawn charges so that it could try the defendant on all charges. The defendant argued that he could not be re-tried on the dismissed charges without being put twice in jeopardy. The trial court rejected both parties' arguments and ordered specific performance of the plea agreement. The defendant appealed to the Superior Court, which held that the trial court erred in preventing the defendant from exercising his rule-based right to have his case reviewed at a *de novo* trial. However, the Superior Court also held that the defendant had waived his double jeopardy protections by voluntarily opting for a new trial instead of accepting the terms of his plea agreement. The Superior Court remanded the case, informing the defendant that he either could accept the plea

---

[5]     Although the defendant in Lennon originally was before the court of common pleas when he pleaded guilty, the Commonwealth agreed to "log" his disorderly conduct conviction with the district court. It appears this was done so that the defendant later could seek expungement of his arrest record. Lennon, 64 A.3d at 1093.

agreement or proceed to a new trial on the full panoply of charges originally lodged against him.

In the present case, the trial court concluded that, although Ball was appealing from a conviction and not a guilty plea, his case was indistinguishable from Lennon because Rule 462(A) allows for appeals from both convictions and guilty pleas. Accordingly, the trial court overruled Ball's objections and reinstated the DUS-DUI charge. Following the *de novo* trial, Ball was convicted of DUS-DUI, and sentenced to sixty days' imprisonment and a $1000 fine. Ball then appealed this conviction to the Superior Court.

Ball presented three issues to the Superior Court:

I. Whether the Double Jeopardy Clause[s] of the United States and Pennsylvania Constitutions prevent the Commonwealth from retrying [Ball] after an acquittal by the Magisterial District Judge?

II. Whether [Ball's] appeal of a verdict of guilt from a Magisterial District Judge includes offenses for which [Ball] was found not guilty?

III. Whether a Magisterial District Judge may find [Ball] guilty of an offense for which [he] has not been charged?

Commonwealth v. Ball, 97 A.3d 397, 399 (Pa. Super. 2014).

The Superior Court addressed only the double jeopardy issue. The court began by recognizing that both the United States and Pennsylvania Constitutions prohibit a person from being "twice put in jeopardy of life or limb." See Pa. Const. art. I, § 10; U.S. Const. amend. V. The court explained that this prohibition was designed to protect individuals from being tried or punished more than once for the same allegation or offense. Specifically, the court recognized that the double jeopardy clauses protect against a second prosecution following an acquittal or conviction, see Commonwealth v. Young, 35 A.3d 54, 58-59 (Pa. Super. 2011), and that, "[i]n Pennsylvania, jeopardy attaches when a defendant stands before a tribunal where guilt or innocence will be determined." Ball, 97 A.3d at 400 (quoting Young, 35 A.3d at 58-59). The court also

made clear that the protection against double jeopardy applies with full force in summary cases. See Commonwealth v. Walczak, 655 A.2d 592, 596 (Pa. Super. 1995) (stating that, in a criminal proceeding before a MDJ, "jeopardy attaches ... when the court begins to hear evidence. Thus, where a defendant has been found not guilty at trial, he may not be retried on the same offense.").

Turning to the present case, the Superior Court determined that, after a fact-finding hearing, the MDJ had acquitted Ball of DUS-DUI, the offense for which he was charged. Therefore, the court held, "it was impermissible to retry Ball, and the trial court's adjudication of guilt at the *de novo* bench trial was a legal nullity." Ball, 97 A.3d at 400. The Superior Court emphasized that Ball's voluntary appeal for a trial *de novo* had no bearing upon its holding because Ball's acquittal by the MDJ constitutes an unassailable legal finality. See Walczak, 655 A.2d at 596 (stating that "a fact-finder's verdict of not guilty is accorded absolute finality. It is completely insulated from appellate review.") (citation omitted). The Superior Court disavowed the trial court's reliance upon Lennon, opining that Lennon was inapposite because the defendant in that case had appealed from a guilty plea, after entering a negotiated plea agreement, thereby validly waiving his double jeopardy challenge, whereas here, Ball had pled not guilty to DUS-DUI, and was acquitted of that offense. Ball, 97 A.3d at 400 (citing Lennon, 64 A.3d at 1101). Finally, without citing precedent, the Superior Court held that Ball's conviction for DUS by the MDJ was "of no moment" because Ball had not been charged with that offense. Without addressing either of the remaining issues raised by Ball, the Superior Court reversed Ball's judgment of sentence, and discharged him. The Commonwealth sought reargument, which was denied.

We subsequently granted allowance of appeal in order to address the following issues (quoted verbatim from the Commonwealth's petition):

(1) Given the extensive impact the Superior Court's published opinion could have on the lower courts and prosecution offices in situations where a defendant initiates a statutory summary appeal from a Magisterial District Judge's *sua sponte* finding of guilt on an uncharged, lesser-included offense, should this Honorable Court grant review because the purpose for double jeopardy protections are not implicated, or implicated minimally, when the defendant appeals his conviction for a trial *de novo*?

(2) Should this Honorable Court exercise its supervisory authority over the Superior Court's erroneous discharge of defendant and remand his case for sentencing on the lesser-included offense he appeals and necessarily was found guilty of committing?

Commonwealth v. Ball, 111 A.3d 745 (Pa. 2015).

The core premise of the Commonwealth's argument before this Court is that the prohibition against double jeopardy is not implicated where a defendant voluntarily subjects himself to further prosecution. The Commonwealth contends that the two-tiered *de novo* review system provides criminal defendants with "an abundance of extra protections" such that a waiver of double jeopardy protections is manifest (and manifestly reasonable) in this scenario. Commonwealth Br. at 11.

The Commonwealth emphasizes that the MDJ gave Ball a "break" by *sua sponte* charging and convicting him of DUS instead of DUS-DUI, which it argues is akin to a plea offer. The Commonwealth explains that Ball had an opportunity to choose to accept the lesser conviction or to proceed to a *de novo* trial and risk being convicted of any of the crimes that were originally charged. As support for this position, the Commonwealth cites Colten v. Kentucky, 407 U.S. 104 (1972), where the Supreme Court of the United States reviewed similar issues in the context of Kentucky's two-tiered summary appeal system. There, the Supreme Court stated that a sentence imposed by the lower court "in effect is no more than an offer in settlement." Id. at 119. The Commonwealth differentiates these so-called "breaks" from "legitimate lesser included offense findings," although it maintains that its argument is equally valid

regardless of which label best characterizes the MDJ's decision. Commonwealth Br. at 10-11.

The Commonwealth also cites Serfass v. United States, 420 U.S. 377 (1975), in which the Supreme Court stated that "[t]he constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offence [*sic*]." Id. at 387-88 (quoting Green v. United States, 355 U.S. 184, 187-88 (1957)). The Commonwealth claims that this policy embodies an overarching interest of promoting "finality" in judicial proceedings. See United States v. Jorn, 400 U.S. 470, 479 (1971) ("The Fifth Amendment's prohibition against [double jeopardy] represents a constitutional policy of finality for the defendant's benefit in federal criminal proceedings"). The Commonwealth argues that, if finality is the primary concern, its importance is diminished when the defendant himself initiates the second proceeding.

Although the Commonwealth acknowledges that it could not "unilaterally resurrect an implied acquittal for *de novo* review" and that "courts have used strong language against retrials following an acquittal," Commonwealth Br. at 18, it argues that limited exceptions to this rule exist. See Commonwealth v. Gibbons, 784 A.2d 776 (Pa. 2001) (Saylor, J., concurring) (emphasizing that "there is no absolute double jeopardy bar to appellate review of judgements of acquittal," and explaining that appeal is allowed for pure issues of law); see also People v. Aleman, 667 N.E.2d 615, 625 (Ill. App. Ct. 1996) (recognizing an exception to double jeopardy bar of appellate review of acquittal where trial proceedings are a "sham" or otherwise infected with fraud or collusion). Specifically, the Commonwealth stresses that the Superior Court has held that waiver of double jeopardy protections is possible. See Commonwealth v. Larkins, 829 A.2d 1203 (Pa. Super. 2003) (recognizing that defendant could waive double

jeopardy when second prosecution on lesser included offense would be to his benefit, but holding that defendant had failed to preserve such argument).[6] The Commonwealth urges that Larkins established that waiver is at least possible in situations where the purposes of double jeopardy protections are not implicated.

Finally, the Commonwealth suggests that the Supreme Court of Virginia has addressed the precise issue presented in this case, and urges this Court to adopt the approach of the dissent in that case. In Buck v. Danville, 192 S.E.2d 758 (Va. 1972), the Supreme Court of Virginia held that double jeopardy precluded retrial on an implicitly acquitted, greater offense of driving under the influence in the context of a similar, two-tiered *de novo* review system. The dissent, relying upon Colten v. Kentucky, 407 U.S. at 104, would have found that double jeopardy should not apply when a defendant subjects himself to the hazards of a second trial. The dissent considered the first trial to be a "dry run" that becomes a nullity when the defendant opts to have a subsequent *de novo* trial, and therefore the hazards of the first trial disappear. Relying upon the Buck

---

[6] In 1981, Larkins was convicted of first-degree murder and acquitted of the lesser included offenses of third-degree murder and voluntary manslaughter. Larkins, 829 A.2d at 1203. Larkins' direct appeal was unsuccessful, but, in 1995, he sought post-conviction relief and was granted a new trial. At his retrial for first-degree murder, Larkins requested a jury instruction also on third-degree murder and voluntary manslaughter. The trial court denied Larkins' request on grounds that it would put him twice in jeopardy for charges of which he had been acquitted. Larkins appealed a second time, arguing that the jury should have been instructed on the lesser charges at his second trial. The Superior Court recognized that the double jeopardy clauses did not bar the jury from being instructed on the lesser included offenses because waiver or double jeopardy is theoretically possible, but held that Larkins had failed to preserve the argument that he could waive double jeopardy. Notably, in order to avoid such anomalies, the practice of acquitting a defendant of lesser degrees of murder when the defendant is convicted of the higher degree has been disapproved by this Court. See Commonwealth v. Terry, 521 A.2d 398, 410 (Pa. 1987), (ordering trial judges "to adopt and enforce procedures in all homicide cases which will prevent the recording of a jury verdict of not guilty on lesser included degrees of homicide when the jury returns a guilty verdict on a higher degree").

dissent, the Commonwealth concludes by reiterating that the voluntary nature of a defendant's *de novo* appeal undermines the significance of double jeopardy protections. On the strength of this reasoning, the Commonwealth requests that we reverse the Superior Court.

Ball begins his argument by recounting the well-settled principle that the double jeopardy clauses of both the Pennsylvania and United States Constitutions prohibit the Commonwealth from appealing an acquittal, including in summary cases. See Gibbons, 784 A.2d at 776 (holding that the double jeopardy clauses prohibit a second prosecution following an acquittal); Walczak, 655 A.2d 592 (holding that the Commonwealth could not appeal from an acquittal before MDJ because a judgment of acquittal is "completely insulated from appellate review"). Ball also cites Commonwealth v. Edwards, 594 A.2d 720 (Pa. Super. 1991), which involved a defendant who was convicted of harassment and acquitted of disorderly conduct before the MDJ. Although only the harassment conviction was at issue in Edwards, the Superior Court stated that Rule 462(A) clearly allows only for appeals from convictions, as any appeal of an acquittal would violate double jeopardy principles. Id. at 723 (citing Commonwealth Dep't of Transp. v. Springbrook Transp., Inc., 568 A.2d 667, 669 (Pa. Super. 1990)). Ball argues that this line of cases clearly precludes the Commonwealth from being afforded an opportunity to re-try him on his DUS-DUI charge. See Gibbons, 784 A.2d at 777 (explaining that, where Commonwealth fails to meet its burden, it is not afforded another opportunity to put forth evidence it failed to supply during the first proceeding).

Ball distinguishes his case from Lennon, largely tracking the analysis of the Superior Court. He explains that his conviction of DUS was not the result of negotiations or agreement between himself and the Commonwealth. He maintained innocence before the MDJ, who unilaterally found him guilty. Hence, there was no

bargained-for exchange. Ball argues that, in exercising his right to appeal, he did not forfeit any benefit that he had agreed to accept.

Ball rejects the Commonwealth's position that the purposes of double jeopardy protections are not implicated in this case. He maintains that a criminal defendant's interest in finality is so great that the prohibition on double jeopardy has been found to preclude multiple prosecutions even where an acquittal is clearly erroneous. See Borough of West Chester v. Lal, 426 A.2d 603 (Pa. 1981) (applying double jeopardy where acquittal is based upon "egregiously erroneous foundation") (citations to federal cases omitted); Commonwealth v. Wimberly, 411 A.2d 1193 (Pa. 1979) (holding that, where trial court erred in passing on credibility of witnesses at demurrer stage, court's granting demurrer was a *de facto* acquittal and thus, insulated from appellate review); Commonwealth v. Kerr, 29 A.2d 340 (Pa. Super. 1942) (applying double jeopardy where court erroneously enters judgment of not guilty).

Ball also urges the Court to reject the Commonwealth's suggestion that we adopt the approach of the Buck v. Danville dissent. Ball proposes that, if this Court is inclined to look to Virginia for guidance, we should employ a more recent case with more similar facts. In Commonwealth v. Dipietro, 79 Va. Cir. 55 (2009), the defendant was tried in a district court for various traffic offenses, acquitted of those offenses, and convicted of an uncharged offense. On appeal, the appellate court held that, because the defendant had been acquitted of the traffic offenses, he could not be retried on them even though he requested the trial *de novo*. Ball also notes that other states have upheld double jeopardy protections in the context of similar two-tiered, *de novo* review systems. See, e.g., Kansas City v. Bott, 509 S.W.2d 42 (Mo. 1974).

Ball criticizes the Commonwealth's reliance upon Colten v. Kentucky, finding it distinguishable from the present case. Ball explains that, in Colten, the defendant was

convicted before the lower tribunal of the crime for which he was charged. After his *de novo* trial on appeal, he again was convicted of the same offense but received a harsher sentence. The Supreme Court held that the prohibition on double jeopardy did not bar Colten from receiving a harsher sentence. Ball argues that the Supreme Court's rejection of Colten's double jeopardy argument is inapplicable to the present case because Ball's double jeopardy arguments apply to a charge for which he was acquitted, whereas Colten's argument was made only in regard to sentencing.

Finally, Ball argues that, in addition to his constitutional rights, the rules of criminal procedure also mandate a ruling in his favor. Most prominently, Ball notes that Rule 462(A) only allows a *defendant* to appeal from a *guilty plea* or *conviction* before the MDJ. He emphasizes that there is no rule allowing the Commonwealth to appeal the MDJ's decision, and that acquittals are not included in the list of appealable orders. Therefore, Ball argues, the trial court was prohibited from considering his acquitted DUS-DUI charge.

We turn now to the merits of the double jeopardy issue.

The prohibition on double jeopardy was an ancient aspect of the common law. It grew out of the maxim: "*nemo debet bis vexari pro una et eadem causa*," United States v. Sanges, 144 U.S. 310, 315 (1892), which translates to "no man shall be twice vexed for one and the same cause." Ex parte Lange, 85 U.S. 163, 168 (1873). This safeguard is enshrined in the Fifth Amendment to the United States Constitution as "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb. . ." U.S. Const. amend. V, and in the Pennsylvania Constitution as "[n]o person shall, for the same offense, be twice put in jeopardy of life or limb." Pa. Const. art. I, § 10. We have interpreted the rights provided by the two clauses as coextensive. Commonwealth v. States, 938 A.2d 1016, 1019 (Pa. 2007).

"Perhaps the most fundamental rule in the history of double jeopardy jurisprudence has been that '[a] verdict of acquittal . . . could not be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy, and thereby violating the Constitution.'" United States v. Martin Linen Supply Co., 430 U.S. 564, 571 (1977) (quoting United States v. Ball, 163 U.S. 662, 671 (1896)). "It is laid down in 3 Whart. Crim. L., last ed., § 3250, that 'where there has been an acquittal on one count, and a conviction on another, a new trial can be granted only on the count on which there has been a conviction; and it is error on a second trial to put the defendant on trial on the former.'" Hollister v. Commonwealth, 60 Pa. 103, 106 (1869). These well-settled and long-standing precedents compel a ruling in Ball's favor.

"The double jeopardy prohibition is often described as a universal principle of reason, justice and conscience." Commonwealth v. Bolden, 373 A.2d 90, 103 (Pa. 1977) (citations omitted). The United States Supreme Court has described it as a "fundamental ideal in our constitutional heritage." Benton v. Maryland, 395 U.S. 784, 794 (1969). It exists because "criminal prosecution imposes severe psychological, physical and economic burdens on the accused[, and i]t is morally wrong for the government to impose these hardships on an individual more than once for a single offense. The double jeopardy prohibition stems from this moral judgment which is deeply held by our society." Bolden, 373 A.2d at 104. In Green v. United States, 355 U.S. 184, 187-88 (1957), the Supreme Court expanded upon this rationale as follows:

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

Id. The prohibition on double jeopardy is a pillar of American criminal law.

The principle that an acquittal "is an absolute bar to any subsequent prosecution for the same offense . . . is fundamental and is part of the fabric which forms the basis of the double jeopardy prohibition." Commonwealth v. Beck, 464 A.2d 316, 317 (Pa. 1983) (citations omitted). American double jeopardy jurisprudence affords the utmost finality to acquittals. In Commonwealth v. Tillman, 461 A.2d 795 (Pa. 1983), this Court explained the finality that follows an acquittal as follows:

> [T]he Supreme Court of the United States has recently observed [that] "the fact[-]finder in a criminal case has traditionally been permitted to enter an unassailable but unreasonable verdict of 'not guilty.'" Jackson v. Virginia, 443 U.S. 307, 317 n.10 (1979). "'[W]e necessarily accord absolute finality to a jury's verdict of acquittal—no matter how erroneous its decision.'" Bullington v. Missouri, 451 U.S. 430, 442 (1981) (quoting Burks v. United States, 437 U.S. 1, 16 (1978)); accord Commonwealth v. Mitchell, 438 A.2d 596, 597 (Pa. 1981). Thus, where a defendant has been found not guilty at trial, he may not be retried on the same offense, "even if the legal rulings underlying the acquittal were erroneous." Sanabria v. United States, 437 U.S. 54, 64 (1978). . . . "[T]he law attaches particular significance to an acquittal. To permit a second trial after an acquittal, however mistaken the acquittal may have been, would present an unacceptably high risk that the Government, with its vastly superior resources, might wear down the defendant so that 'even though innocent, he may be found guilty.'" United States v. Scott, 437 U.S. 82, 91 (1978) (quoting Green, 355 U.S. at 188); see also Tibbs v. Florida, 457 U.S. 31, 41 (1982) (verdict of not guilty "absolutely shields the defendant from retrial"). So, too, no prosecution appeal lies from a not guilty verdict, even where that verdict is "based upon an 'egregiously erroneous foundation.'" [Borough of West Chester, 426 A.2d at 605] (quoting Sanabria, 437 U.S. at 64).

Tillman, 461 A.2d at 796-97 (citations modified). Additionally, "[the Supreme] Court has consistently refused to rule that jeopardy for an offense continues after an acquittal, whether that acquittal is express or implied by a conviction on a lesser included offense. . . ." Price v. Georgia, 398 U.S. 323, 329 (1970).

Green v. United States provides an application of these principles that is most analogous to the circumstances before us. In Green, the defendant was tried for both first and second-degree murder in the United States District Court for the District of

Columbia.[7]  355 U.S. at 185.  The jury found him guilty of second-degree murder and arson, but its verdict was silent as to first-degree murder.  Id. at 186.  Green appealed his conviction, which the United States Court of Appeals for the District of Columbia Circuit reversed and remanded for a new trial.  On remand, Green again was tried on the first-degree murder charge, notwithstanding his double jeopardy objection. Following his second trial, Green was convicted of first-degree murder and sentenced to death.  Green appealed this conviction, arguing that it was precluded by the double jeopardy clause.  A split panel of the Court of Appeals affirmed.  Id.  Green petitioned the United States Supreme Court for a writ of *certiorari*, and the Court granted review solely upon Green's double jeopardy claim.  Id. at 186-87.

The Supreme Court began its analysis by recognizing the venerable history of the prohibition on double jeopardy in our legal system.  Id. at 187 (citing 4 Blackstone's Commentaries 335; Ex parte Lange, 85 U.S. at 169; Ball, 163 U.S. at 67).   The Court affirmed that it long has been settled that an acquittal is final and is a bar to subsequent prosecution on the same offense.  Green, 355 U.S. at 188.  The Court determined that the jury's silence regarding the first-degree murder charge while rendering its verdict following Green's first trial constituted an acquittal of that charge.  Id. at 190-91.  Thus, the government could not retry Green for first-degree murder after he was awarded a new trial following his successful appeal.  Id.

The Supreme Court rejected the government's contention that Green had waived his constitutional defense of double jeopardy by appealing his conviction of second-

---

7  The applicable statute in force at the time provided that "[w]hoever, being of sound memory and discretion . . . without purpose so to do kills another in perpetrating or in attempting to perpetrate any arson, as defined in section 22-401 . . . is guilty of murder in the first degree."  D.C. Code § 22-2401 (1951).  The D.C. Code further provided that "[w]hoever with malice aforethought, except as provided in [§] 22-2401 . . . kills another, is guilty of murder in the second degree."  D.C. Code § 22-2403 (1951).

degree murder and requesting a new trial. The Court similarly rejected the government's argument that Green's first jeopardy had not yet terminated as a result of his appeal. The Court explained that adopting either of these theories "would unduly impair the constitutional prohibition against double jeopardy." Id. at 198. The Court continued as follows:

> The right not to be placed in jeopardy more than once for the same offense is a vital safeguard in our society, one that was dearly won and one that should continue to be highly valued. If such great constitutional protections are given a narrow, grudging application they are deprived of much of their significance.

Id. The Supreme Court concluded that Green's second trial for a charge of which he had been acquitted "was contrary to both the letter and spirit of the Fifth Amendment." Id. Thus, the Supreme Court held that Green could not be retried on an acquitted offense at a new trial following a successful appeal of a conviction for a lesser included offense.

In light of Green, the case before us is straightforward. Ball was charged with DUS-DUI, proceeded to a summary trial before a MDJ, and was convicted of the lesser included offense of DUS. He exercised his right to have that conviction reviewed in a new trial before the court of common pleas pursuant to Pa.R.Crim.P. 462(A). These facts are nearly identical to those in Green; both defendants received a new trial following a successful appeal from a conviction of a lesser included offense, which reflected an implicit acquittal of the defendants for the greater offense.[8] The Supreme Court held that the government could not retry the acquitted charge at Green's second trial, and we hold that the same rule applies to Ball. Accordingly, we affirm the Superior

---

[8] The Commonwealth concedes that conviction of a lesser included offense is an implicit acquittal of the greater offense. See Commonwealth Br. at 13; see also Green, 355 U.S. at 190-91.

Court's holding that the double jeopardy clauses of the United States and Pennsylvania Constitutions prohibit the Commonwealth from re-trying Ball on DUS-DUI.

We reject the Commonwealth's argument that Ball waived his right not to be put twice in jeopardy by exercising his right to appeal his DUS conviction pursuant to Rule 462(A). We recognize that the Superior Court's *dictum* in Larkins implies that double jeopardy protections may be waived by criminal defendants in situations where the protections actually harm their interests. See Larkins, 829 A.2d at 1203 (opining that defendant could waive double jeopardy in order to have jury instructed on lesser offense as to which he had previously been acquitted). However, Larkins is not binding upon this Court, and addressed a situation that is no longer applicable in Pennsylvania. See *supra* 9 n.6. In any event, this case does not present a scenario in which Ball would benefit from waiving his double jeopardy rights. While the rights can be waived, Ball has never voluntarily attempted to do so.

Furthermore, Green directly undermines the Commonwealth's waiver argument. In Green, the government took the same position, and the Supreme Court responded as follows:

> We cannot accept this paradoxical contention. 'Waiver' is a vague term used for a great variety of purposes, good and bad, in the law. In any normal sense, however, *it connotes some kind of voluntary knowing relinquishment of a right*. Cf. Johnson v. Zerbst, 304 U.S. 458 [(1938)]. When a man has been convicted of second[-]degree murder and given a long term of imprisonment it is wholly fictional to say that he 'chooses' to forego his constitutional defense of former jeopardy on a charge of murder in the first degree in order to secure a reversal of an erroneous conviction of the lesser offense. In short, *he has no meaningful choice*. And as Mr. Justice Holmes observed, with regard to this same matter in Kepner v. United States, 195 U.S. 100, [135 (1904)]: 'Usually no such waiver is expressed or thought of. Moreover, it cannot be imagined that the law would deny to a prisoner the correction of a fatal error unless he should waive other rights so important as to be saved by an express clause in the Constitution of the United States.'

Green, 355 U.S. at 191-92 (emphasis added). Constitutional rights can be waived. But, as Green made clear, such a waiver must be knowing and voluntary.

We cannot assume that Ball had cause to believe that filing a summary appeal would result in waiver of his constitutional right against double jeopardy. The Commonwealth contends that Ball volunteered to be subjected to a second prosecution, which he could have avoided by merely accepting the MDJ's ruling. Essentially, the Commonwealth argues that Ball was in the same position as a defendant who enters a guilty plea. In doing so, the Commonwealth overlooks an important distinction between a guilty plea and a conviction: A guilty plea is a knowing and voluntary relinquishment of rights, always preceded by an extensive colloquy that is undertaken specifically to ascertain and confirm that the defendant understands the constitutional rights that he is waiving in exchange for his admission of guilt. Conversely, a conviction follows a trial where the defendant has challenged the prosecution's charges and no inquiry into the defendant's acceptance and understanding of a voluntary plea has been made. The notice form that a defendant must complete in order to appeal from a conviction before a MDJ includes the name and contact information of the defendant, his attorney, and the issuing judge as well as inquiries into the nature of the offense, the sentence, and the grounds for appeal. See Notice of Appeal from Summary Criminal Conviction, 7/24/2013 at 1. Importantly, that form does not include any waiver provision, nor any notice of constitutional rights. Choosing to complete this form is not the same as making a knowing and intelligent waiver, particularly when Ball was not instructed in any way of such a consequence. Ball did not enter a voluntary plea in exchange for a lesser sentence. Instead, the MDJ elected to convict him of an uncharged, lesser included offense, and Ball exercised his right to have that conviction reviewed by a court of record pursuant to the procedure established by Rule 462(A).

To conclude that Ball waived his double jeopardy protections in this scenario would require us to interpret Rule 462(A) as a *de facto* waiver provision, which constructively informed Ball that he would waive his double jeopardy rights by opting for a trial *de novo*. Rule 462(A) says nothing about double jeopardy or waiver, and we decline to read such language into the rule. We are unaware of any constitutional right that can be waived by operation of a rule of procedure that does not explicitly provide for the waiver. It is of no moment that Ball chose to pursue a trial *de novo* instead of accepting his lesser conviction. The Commonwealth tried him twice for DUS-DUI, and our Constitutions prohibit the prosecution from doing so.

On this point, Green again is instructive:

> Reduced to plain terms, the Government contends that in order to secure the reversal of an erroneous conviction of one offense, a defendant must surrender his valid defense of former jeopardy not only on that offense but also on a different offense for which he was not convicted and which was not involved in his appeal. Or stated in the terms of this case, he must be willing to barter his constitutional protection against a second prosecution for an [acquitted] offense punishable by death as the price of a successful appeal from an erroneous conviction of another offense for which he has been sentenced to five to twenty years' imprisonment . . . a defendant faced with such a 'choice' takes a 'desperate chance' in securing the reversal of the erroneous conviction. *The law should not, and in our judgment does not, place the defendant in such an incredible dilemma. Conditioning an appeal of one offense on a coerced surrender of a valid plea of former jeopardy on another offense exacts a forfeiture in plain conflict with the constitutional bar against double jeopardy*.

Green, 355 U.S. at 193-94 (emphasis added). It is plain that Ball's potential punishment pales in comparison to the sentence at stake in Green. Yet, as a matter of constitutional law, this difference is inconsequential; "the Double Jeopardy Clause of the Fifth Amendment is written in terms of potential or risk of trial and conviction, not punishment." Price, 398 U.S. at 329. The Commonwealth's proposed interpretation of Rule 462(A) presents defendants with the same structural dilemma that the Green Court held intolerable in view of the constitutional prohibition against double jeopardy.

The Commonwealth attempts to distinguish <u>Green</u> by arguing that a defendant's interest in finality is minimized in a two-tiered summary offense system. This is a distinction without a difference, and is premised upon the faulty conclusion that the rule provides constitutionally adequate notice. Rule 462(A) does not address double jeopardy or any other constitutional right. The rule merely lays out the procedure that is to be followed in summary proceedings. It is no different materially from the rules of appellate procedure followed by the federal courts in Green's appeal. Every jurisdiction has rules that provide for how a case is to proceed. In Pennsylvania, we have decided to forego the typical appellate procedure in the context of summary proceedings, instead providing that an appeal from a summary conviction automatically results in a new trial.[9] That new trial is no different from a new trial that is awarded after a successful appeal, in which retrial on acquitted claims indisputably is prohibited. <u>See</u> <u>Price</u>, 398 U.S. at 327; <u>Green</u>, 355 U.S. at 190-91; <u>Tillman</u>, 461 A.2d at 796-97.

Moreover, the language of Rule 462(A) is insufficient to distinguish this case from <u>Green</u>. The term trial *de novo* has been defined as a "new trial on the entire case . . . conducted as if there had been no trial in the first instance." Black's Law Dictionary 1544 (8th ed. 2004). Although a trial *de novo* typically means that a case starts again "from the beginning," it cannot be interpreted to allow for a second prosecution of an acquitted charge and remain faithful to the double jeopardy clauses. If that was the case, then the Rule necessarily would be unconstitutional because it would permit double jeopardy without a valid waiver.[10] The double jeopardy clauses of the United

---

[9] Various values may be served by this choice, including maximizing judicial economy, while preserving the fundamental rights to a speedy trial and appellate review. There is no textual support from which to assume that this is a concession or benefit provided to defendants in exchange for waiver of their double jeopardy defense.

[10] <u>Cf.</u> Pa.R.Crim.P. 590 (requiring judge to conduct inquiry of defendant in order to determine that guilty plea is entered voluntarily and understandingly); <u>Commonwealth v.</u> (continued…)

States and Pennsylvania Constitutions do not allow a rule of procedure to vitiate a constitutional right, especially *sub silentio*.

A plain reading of Rule 462(A) supports our position that acquittals before an MDJ are final. The rule provides that a defendant may appeal a "conviction or guilty plea." It does not provide for, or permit, an appeal of an acquittal. The inclusion of the term "trial *de novo*" merely establishes that the court of common pleas is hearing the case for the first time, as if it had originated there. When a case originates in the court of common pleas, a defendant may raise a double jeopardy defense if he has already been acquitted of that charge. Although the *de novo* standard establishes that the court of common pleas is not bound by the MDJ's findings of fact or law, the court nonetheless remains bound by the Constitution, and, therefore, the acquittal. A trial *de novo* can concern only those charges that resulted in convictions before the MDJ.

Having determined that the Commonwealth was prohibited from reinstating Ball's DUS-DUI charge, we now consider the second issue: whether the Superior Court erred in discharging Ball completely. Ball sought a retrial on his conviction for DUS. Pursuant to Rule 462(A), he was entitled to have that conviction reviewed *de novo* in the court of common pleas. He was not, however, entitled to a total discharge as to his duly convicted offense. For the following reasons, we reverse the Superior Court's order of discharge.

The Commonwealth argues that, after ruling in Ball's favor in regard to the double jeopardy issue, we should remand the case for resentencing or retrial of the

_____

(…continued)
Willis, 369 A.2d 1189, 1190 (Pa. 1977) (questions enumerated in comment to rule governing plea agreements are mandatory in order for plea colloquy to be valid, including, *inter alia*, inquiry into defendant's awareness of right to trial by jury, presumption of innocence).

lesser included offense of DUS. First, the Commonwealth presumes that the Superior Court discharged the MDJ's conviction because the court reasoned that the MDJ did not have the authority to *sua sponte* charge and convict Ball on the lesser included offense. The Commonwealth believes that there is no dispute that a common pleas judge can find a defendant guilty of an uncharged, lesser included offense in a bench trial, and suggests that the same rules should apply to MDJs based upon Pa.R.Crim.P. 454(B) ("[T]he issuing authority shall try the case in the same manner as trials in criminal cases are conducted in the courts of common pleas when jury trial has been waived[.]").

The Commonwealth argues that, even if it was error to re-try Ball on DUS-DUI, by convicting Ball of DUS-DUI the trial court necessarily, if not expressly, found Ball guilty of DUS. Therefore, the Commonwealth contends that only resentencing on the DUS conviction is required. Alternatively, the Commonwealth asks that we remand the case for a re-trial only on the DUS charge because that is what Ball originally sought by appealing the MDJ's decision.

Ball argues that the MDJ lacked statutory authority to charge and convict him *sua sponte* of a lesser included offense. Ball claims that the trial court's reliance upon Cunningham, 551 A.2d at 288, is misplaced. In Cunningham, the Superior Court held that the court of common pleas could find a defendant guilty of a lesser included offense even when only the greater offense is charged. Id. Without citing to additional precedent, Ball claims that this rule is limited to the court of common pleas and does not apply to MDJs. Thus, Ball argues that his case should have been dismissed once the MDJ acquitted him of DUS-DUI, and that the Superior Court was correct to discharge him.

On this issue, the Commonwealth is correct. While there is no statutory provision addressing a court's or MDJ's authority *sua sponte* to find a defendant guilty of a lesser

included offense, the law is well-settled that trial judges in the court of common pleas have this authority. See Commonwealth v. Sims, 919 A.2d 931, 933 (Pa. 2007) (holding that an attempt crime is a lesser included offense of the substantive crime, and thus a defendant may be convicted of an attempted crime even if the Commonwealth charged only the substantive offense and not attempt). The case law emphasizes that the important inquiry is whether a defendant has been put on notice of the charges against him and can adequately prepare a defense. See Commonwealth v. Reese, 725 A.2d 190, 191 (Pa. Super. 1999), *appeal denied*, 740 A.2d 1146 (Pa. 1999); Cunningham, 551 A.2d at 289 (citing Commonwealth v. Stots, 324 A.2d 480, 481 n.3 (Pa. Super. 1974)). This notice may be either express, *i.e.* charged, or implied where the uncharged offense is a lesser included offense and all of the elements of the lesser offense are included in the greater. Commonwealth v. Pemberth, 489 A.2d 235, 237 (Pa. Super. 1985); Commonwealth v. Gouse, 429 A.2d 1129, 1132 (Pa. Super. 1981). The parties do not dispute that the court of common pleas has this authority, nor do they dispute that DUS is a lesser included offense of DUS-DUI.

Because Rule 454(B) clearly provides that the MDJ "shall try the case in the same manner as trials in criminal cases are conducted in the courts of common pleas when jury trial has been waived," there is no reason that the MDJ would not have the same authority as a common pleas judge to *sua sponte* convict a defendant of a lesser included offense. Therefore, the Superior Court's conclusion that "it is of no moment" that the MDJ convicted Ball of DUS is erroneous. That conviction was valid under the law, and it was that conviction that Ball sought to have the trial court review *de novo*.

Ball never received his new trial on his DUS conviction. Although the Commonwealth is likely correct that the trial court necessarily found all of the elements of DUS by convicting Ball of DUS-DUI, the court did not try Ball for DUS. Instead, the

court tried him for DUS-DUI, which includes the additional DUI element. Ball was entitled by right to have the trial court weigh the evidence specifically in regard to the conviction he was appealing without the specter of double jeopardy clouding the trial. Therefore, we reverse the Superior Court with regard to this issue and remand the case to the trial court with instructions to conduct a *de novo* trial on the DUS charge only.

In sum, we affirm the order of the Superior Court with respect to the double jeopardy issue, reverse the Superior Court's order of discharge, and remand the case to the trial court for a *de novo* trial on the charge of DUS only.

Chief Justice Saylor and Justices Todd, Donohue and Dougherty join the opinion.

Justice Wecht files a concurring opinion.

Justice Baer files a dissenting opinion.