## COMMONWEALTH of Pennsylvania,

v.

## Patty L. MORGERA, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 3, 2003.
Decided Nov. 25, 2003.

Jamie W. Goncharoff, West Chester, for appellant.

William R. Stoycos, West Chester, for appellee.

BEFORE: LEADBETTER, Judge, SIMPSON, Judge, FLAHERTY, and Senior Judge.

OPINION BY Judge LEADBETTER.

Appellant, Patty L. Morgera, appeals an order of the Common Pleas Court of Chester County (trial court) finding her guilty of harboring a dangerous dog in violation of Section 502–A of the Dog Law [1] because her dog caused severe injury to two sheep. We reverse.

The parties stipulated to the following facts. On March 11, 2002, appellant's dog left appellant's property and entered a pasture containing twenty-seven sheep. Without provocation, the dog bit two pregnant sheep, causing multiple lacerations. The sheep's owner intervened and the dog submitted without further incident. The sheep were examined and treated that eve-

ning by Dr. Cooper, a veterinarian. Dr. Cooper sheared the sheep's wool, cleaned the lacerated areas with warm water and betadine, applied a topical antibiotic ointment, administered pain killers, and directed the owner to keep the wounds clean and to administer penicillin twice a day for seven days. Additionally, Dr. Cooper removed a flap of skin hanging from one of the sheep. Dr. Cooper never returned to administer further treatment. The sheep ultimately recovered and gave birth to healthy lambs without incident. The sheep did not sustain any broken bones or receive sutures.

The district justice found appellant guilty of harboring a dangerous dog in violation of the Dog Law, which provides that an owner of a dog is guilty of the summary offense of harboring a dangerous dog if the dog, among other things, "[k]illed or inflicted severe injury on a domestic animal without provocation while off the owner's property." Section 502–A(a)(1)(ii), 3 P.S. § 459–502–A(a)(1)(ii). The term "severe injury" is defined as "[a]ny physical injury that results in broken bones or disfiguring lacerations requiring multiple sutures or cosmetic surgery." Section 102, 3 P.S. § 459–102. A de novo hearing followed before common pleas, where the parties stipulated that all elements of the offense were met except whether the sheep sustained "severe injury" as defined by the Dog Law.

In support of its case, the Commonwealth offered the testimony of Dr. Cooper who characterized the injuries as "serious and life-threatening" because the sheep could die if the lacerations became infected or the stress of the injuries caused the sheep to abort. As to whether she sutured

1. Act of December 7, 1982, P.L. 784, *as amended*, 3 P.S. § 459–502–A. Section 502–A was added by the act of May 31, 1990, P.L. 213, and is commonly referred to as the Dangerous Dog Statute.

the sheep, Dr. Cooper testified on direct examination as follows:

A. No, I did not suture these animals. Typically, with puncture wounds and dog bite attacks on sheep, the risk of infection is pretty high because the area within the dog's mouth, there is a lot of bacteria in that, and consequently the sheep can end up getting an infection and can become septic and can cause the sheep to die.

Typically, with dog bites, I don't suture them. I have in some situations sutured them and ended up with the animal dying. . . . I don't tend to suture the wounds with dog bites because of the risk of infection.

. . . .

Q. Dr. Cooper, if these very same lacerations that you observed on these two sheep had been caused by a source other than a dog bite, would you have used sutures to stitch them up?

A. Yes, probably I would have. If they were caused by the animal, the sheep getting caught in brush or a fence. or something, I would have sutured some of them, yes.

Notes of Testimony (N.T.) of October 10, 2002, at 26–28. On cross-examination, Dr. Cooper acknowledged that in some situations, she would suture a wound caused by a dog. Appellant also presented expert testimony of another veterinarian, Dr. Althouse, who opined that sutures were not necessary, as evidenced by the fact that the sheep healed effectively without being treated with sutures. Both doctors stated that some wounds are so severe that su-

tures are required despite the risk of infection from a dog bite.

■ Common pleas concluded that an injury fell within the severity requirement of Section 502–A if the injuries were bad enough to require sutures, whether or not sutures were actually used. Further, common pleas found that the sheep sustained severe injury since "Dr. Cooper testified that the injuries were bad enough to require sutures and that sutures would have been used had the injuries not been caused by a dog bite" and, as a result, found appellant guilty of harboring a dangerous dog. *Commonwealth v. Morgera* (No. 3498–02, filed April 3, 2003), slip op. at 4–5 (opinion pursuant to Pa. R.A.P.1925). The present appeal followed.[2]

■ The only issue in this case is whether the injuries sustained by the two sheep constituted "disfiguring lacerations requiring multiple sutures or cosmetic surgery." Section 102 of the Dog Law. Appellant argues that common pleas improperly construed the phrase "requiring sutures" to encompass injuries that could have been sutured. According to appellant, the proper construction, giving the term "requiring" its common and approved usage, mandates that sutures were actually used in order for an injury to be deemed "severe." Appellant also argues that the evidence fails to support the conclusion that sutures were required in this instance. We believe appellant's construction of the statute is overly narrow. There may, in fact, be situations where sutures were, in fact, necessary but were not given because the animal was not taken for medical treatment, or was treated improp-

**2.** Appellant appealed to the Superior Court, which transferred the matter to this court. This court has jurisdiction pursuant to 42 Pa.C.S. § 762(a)(2)(ii), which gives the court exclusive jurisdiction over appeals from final orders of the court of common pleas in Com-

monwealth regulatory cases. The Dog Law is a regulatory statute, rather than a penal statute, administered and enforced by the Pennsylvania Department of Agriculture. *Commonwealth v. Hake*, 738 A.2d 46, 47 n. 3 (Pa.Cmwlth.1999).

erly. However, that is not the case here, and we agree that the evidentiary record was not sufficient to prove beyond a reasonable doubt that sutures were required to treat these sheep.[3]

Section 502–A is not ambiguous, and the term "requiring" in the phrase "requiring sutures" must be construed according to its common meaning and accepted usage. *See In re Condemnation of Right of Way for State Route 79, Section W10,* 568 Pa. 546, 798 A.2d 725 (2002) (noting rules of statutory construction, including that court must give effect to obvious meaning of unambiguous statutory language and that words are construed according to their common and approved usage); *see also* the Statutory Construction Act, 1 Pa.C.S. §§ 1501–1991. It is beyond peradventure that the common meaning of "to require" or "requiring" is "to demand as necessary or essential." *See, e.g.,* Webster's Third New International Dictionary 1929 (1993).

Giving the statute its plain and obvious meaning, it is clear that the record evidence fails to support the conclusion that sutures were required to treat the sheep's lacerations. Dr. Cooper's testimony falls short of demonstrating that sutures were necessary to treat the sheep's injuries; indeed, she provided no testimony at all as to the need for sutures as they related to these injuries, indicating instead that she generally does not suture dog bites due to the risk of infection. The competency of her professional decision not to suture the wounds is in no way challenged, and the sheep healed completely without incident, complication or further veterinary treatment.

We also reject the Commonwealth's argument and common pleas's suggestion on the record[4] that one of the sheep suffered a severe injury because Dr. Cooper's removal of a loose flap of skin with surgical scissors "could constitute cosmetic surgery." Stedman's Medical Dictionary (26th ed.) defines "cosmetic surgery" as surgery "in which the principal purpose is to improve the appearance, usually with the connotation that the improvement sought is beyond the normal appearance, and its acceptable variations for the age and the ethnic origin of the patient."[5] *Id.*

---

**3.** As our Supreme Court has noted, the standard of review used when evaluating the sufficiency of the evidence in a conviction for a summary offense is:

> whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the [offense] charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt.

*Commonwealth v. Williamson,* 532 Pa. 568, 570, 616 A.2d 980, 981 (1992), *quoting Commonwealth v. Jackson,* 506 Pa. 469, 472–73, 485 A.2d 1102, 1103 (1984).

**4.** Common pleas opined from the bench as follows:

> I also think—I don't know what the definition of cosmetic surgery would be, but I think the Commonwealth's argument has some merit, that the trimming of the flesh—

although the picture is enlarged, I'm familiar with sheep and know the perspective of it—the trimming of the flesh could constitute cosmetic surgery, although one doesn't think of performing cosmetic surgery on farm animals, it is performed on other domestic animals. And I guess a horse is a farm animal, but I think the same surgery done on a human being would be cosmetic.

N.T. at 56.

**5.** The Commonwealth defines "cosmetic surgery" as "an operative or manual medical procedure used to correct defects, especially of the face." Commonwealth's appellate brief at 15. This definition was derived by combining the individual dictionary definitions for "cosmetic" and "surgery." While clever, the definition cobbled together by the Commonwealth eviscerates the commonly understood distinction between surgery for cosmetic reasons and surgery to correct a medical defect, since both would be characterized as "cos-

at 1712. Dr. Cooper testified that she removed the flap of skin from the sheep's face because "the blood supply to the flap has been damaged, destroyed, and that flap of skin ends up dying and falling off, even if you try to suture it. It's pointless to suture it, and it takes longer for it to heal when you suture it." N.T. at 28–29. Dr. Cooper did not opine that she performed cosmetic surgery or that the flap of skin was removed for purposes of appearance. Clearly, the flap of skin was removed for medical reasons and not to improve the appearance of that sheep. Accordingly, we reject any contention that the evidence demonstrates that cosmetic surgery was performed on one of the sheep.

Since the evidence failed to demonstrate beyond a reasonable doubt that the sheep suffered disfiguring [6] lacerations requiring multiple sutures or cosmetic surgery, we reverse the judgment of sentence.

Senior Judge FLAHERTY concurs in the result only.

### ORDER

AND NOW, this 25th day of November, 2003, the order of the Court of Common Pleas of the County of Chester in the above-captioned matter is hereby REVERSED.

metic surgery." In addition, the Commonwealth's construction ignores the fact that a "defect" is defined as an irregularity in the surface that spoils the appearance or a flaw or blemish. Webster's Third New International Dictionary at 591.

6. Although not raised by appellant, we see no evidence in the record that the lacerations were disfiguring.