# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania   :
  :
      v.       :   No. 1171 C.D. 2023
  :
Charles Dougherty,       :
                Appellant   :   Submitted: October 8, 2024

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
             HONORABLE CHRISTINE FIZZANO CANNON, Judge (P.)
             HONORABLE MATTHEW S. WOLF, Judge

## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE WOLF                            FILED: November 14, 2024

Charles Dougherty (Dougherty) appeals from the April 21, 2023 order of the Court of Common Pleas of Cumberland County (trial court). The trial court found Dougherty guilty of the summary offense of harboring a dangerous dog under Section 502-A of the Dog Law.[1,2] We reverse.

On October 7, 2022, Carmen Kelley (Kelley) was walking her 19-pound Cockapoo dog named Copper along a rural road between her property and that of Dougherty, her neighbor. Kelley did not enter Dougherty's property, but three of Dougherty's dogs left his property and chased after Copper. Mathew Kern (Kern), Dougherty's son-in-law, was on the Dougherty property with the dogs at the

---

[1] Act of December 7, 1982, P.L. 784, *as amended*, added by the Act of May 31, 1990, P.L. 213, 3 P.S. § 459-502-A.

[2] The trial court also found Dougherty guilty of the summary offense of failing to confine and control his dogs under Section 305 of the Dog Law, 3 P.S. § 459-305(a). Dougherty conceded that conviction and waived any challenge to that aspect of the trial court's order. *See* Dougherty's Br. at 10.

time and attempted to restrain the dogs using electronic collars, but then they continued chasing Copper. Dougherty's dogs repeatedly attacked and bit Copper as Kelley ran with Copper back to her home, a distance of about 200 yards. Copper sustained, and was treated for, several very deep puncture wounds.

The Commonwealth charged Dougherty with, *inter alia*, the summary offense of harboring a dangerous dog under Section 502-A of the Dog Law. At the time relevant for this case,[3] Section 502-A(a) stated the following elements for that offense:

> (1) The dog has done any of the following:
>
> > (i) Inflicted severe injury on a human being without provocation on public or private property.
> >
> > (ii) Killed or inflicted severe injury on a domestic animal, dog or cat without provocation while off the owner's property.
> >
> > (iii) Attacked a human being without provocation.
> >
> > (iv) Been used in the commission of a crime.
>
> (2) The dog has either or both of the following:
>
> > (i) A history of attacking human beings and/or domestic animals, dogs or cats without provocation.
> >
> > (ii) A propensity to attack human beings and/or domestic animals, dogs or cats without provocation. A propensity to attack may be proven by a single incident of the conduct described in paragraph (1)(i), (ii), (iii) or

---

[3] After the events of this case and Dougherty's conviction, Section 502-A of the Dog Law was substantially amended by the Act of October 23, 2023, P.L. 114, effective January 22, 2024.

(iv).

(3) The defendant is the owner or keeper of the dog.

3 P.S. § 459-502-A(a). On November 16, 2022, a magisterial district judge found Dougherty guilty on all counts. Dougherty filed a summary appeal to the trial court.

The trial court held a *de novo* hearing on April 21, 2023. The Commonwealth presented Kelley's testimony. She explained that she took Copper for a walk and, upon turning around, noticed Dougherty's dogs had approached immediately behind her and Copper. Notes of Testimony, April 21, 2023 Hr'g (N.T.) at 7-8. The dogs then attacked and bit Copper repeatedly and followed Kelley and Copper back to Kelley's home, a distance of about 200 yards. *Id.* at 8-13. The dogs knocked Kelley down several times as she tried to intervene along the way. *Id.* at 13-14. Kelley stated she did nothing to provoke the attack, although at one point after the dogs had attacked Copper she tried (unsuccessfully) to use a shovel she was carrying to separate the dogs. *Id.* at 15-16. The attack ended when Kelley returned to her home and placed Copper inside; Dougherty's dogs left Kelley's property soon thereafter when Kern came and called them. *Id.* at 18-19. The emergency veterinarian who treated Copper after the attack initially told Kelley sutures would be needed, but ultimately Copper's wounds were treated without sutures. *Id.* at 12. Kelley also described an earlier attack by the same dogs on Copper in February 2022, though Copper was not injured in that attack. *Id.* at 19-20.

On cross-examination, Kelley acknowledged that she did not see Dougherty's dogs initially run toward her, but turned around and they were already behind her. *Id.* at 24. She estimated the attack lasted for about 15 minutes. *Id.* at 24-26. Kelley sustained minor injuries such as scratches and soreness, for which she later sought medical treatment, but the dogs did not bite her. *Id.* at 26-27.

3

Dougherty presented Kern's testimony. He estimated that the attack lasted five minutes. *Id.* at 36. He acknowledged that the dogs ran toward Kelley and Copper. *Id.* at 37. He stated the dogs wear "shock collars" when outside to keep them on the property, and he was able to use the collars to temporarily stop the dogs, but this worked only for a short time. *Id.* at 37-38. He stated that Kelley screamed and ran away from the dogs as they followed her and Copper, but he did not see the dogs bite Copper. *Id.* at 39. Kern explained that the dogs associate shovels with playtime. *Id.* at 39-40. On cross-examination, Kern confirmed that Kelley and Copper were more than 100 yards away from Dougherty's property when the dogs began running toward her. *Id.* at 41. He explained that although the dogs initially stopped as a result of the electronic collars, once Kelley put her dog down and ran screaming the dogs continued their pursuit. *Id.* at 43.

The trial court concluded that the Commonwealth established the first element under Section 502-A(a) because the dogs caused severe injury to Copper, satisfying Section 502-A(a)(1)(ii) (inflicting severe injury on a dog). N.T. at 55. It reasoned that, although no sutures were used to treat the injuries, the factfinder "d[id]n't need stitches" to determine severe injury because the events of the attack itself were severe and the injuries could have been worse. *Id.* at 55-56. The trial court specifically "d[id] not find the dogs attacked [] Kelley," and thus it did not rely on Section 502-A(a)(1)(iii) (attack on a human) to support Dougherty's conviction. *Id.* at 55. The trial court also concluded that Kelley's running away from the dogs and carrying a shovel did not provoke the attack on Copper. *Id.* at 54. The trial court found the second element under Section 502-A(a)—history and/or propensity—satisfied by Kelley's credible testimony of an earlier attack. *Id.* at 54-55. With the first two elements met, and with Dougherty conceding ownership of

4

the dogs (the third element) the trial court found Dougherty guilty of harboring a dangerous dog under Section 502-A. This appeal followed.

On appeal,[4] Dougherty challenges the sufficiency of the evidence to establish the first two elements under Section 502-A(a)(1)-(2), each of which must be independently established to support a conviction. As to the first element, he argues none of the four alternative parts of Subsection (1) was established below. He initially argues there is not sufficient evidence to show that his dog "inflicted severe injury on a . . . dog . . . without provocation" under Subsection (1)(ii). He claims Copper's injuries do not meet the statutory definition of "severe injury," in part because the veterinarian did not ultimately suture the wounds. The Commonwealth responds that the Court should construe the meaning of "severe injury" in a way that includes the deep, disfiguring puncture wounds Copper received, and should not require suturing as a *per se* requirement for showing severe injury.

"Severe injury" means "[a]ny physical injury that results in broken bones or disfiguring lacerations requiring multiple sutures or cosmetic surgery." Section 102 of the Dog Law, 3 P.S. § 459-102. The definition is unambiguous and to satisfy the disfiguring lacerations (as opposed to broken bones) prong, the record must demonstrate that either multiple sutures or cosmetic surgery was necessary or

---

[4] Our standard of review of convictions for summary offenses is limited to considering whether the defendant's constitutional rights were violated, and whether the trial court erred as a matter of law or abused its discretion. *Commonwealth v. Borriello,* 696 A.2d 1215, 1216 n.3 (Pa. Cmwlth. 1997), *aff'd,* 723 A.2d 1021 (Pa. 1999). "[W]hen evaluating the sufficiency of the evidence in a conviction for a summary offense," we ask "whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offense charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt." *Commonwealth v. Williamson*, 616 A.2d 980, 981 (Pa. 1992) (quoting *Commonwealth v. Jackson*, 485 A.2d 1102, 1103 (Pa. 1984)).

essential to treat the injury. *Commonwealth v. Morgera*, 836 A.2d 1070, 1073 (Pa. Cmwlth. 2003). In *Morgera*, the testifying veterinarian did not suture the puncture wounds the animal received and stated she does not normally suture that type of wound. *Id.* at 1072-74. She also clarified that she removed a flap of skin for medical (not cosmetic) purposes. *Id.* We held that that evidence was not sufficient to demonstrate an injury "requiring multiple sutures" for purposes of showing severe injury. *Id.* at 1074. We also observed, however, that sutures need not actually be used to show that they were required: "There may, in fact, be situations where sutures were, in fact, necessary but were not given because the animal was not taken for medical treatment, or was treated improperly." *Id.* at 1072. But we held "that was not the case" in *Morgera*, concluding that "the evidentiary record was not sufficient to prove *beyond a reasonable doubt* that sutures were required to treat" the injury. *Id.* at 1073 (emphasis added).

It is undisputed that neither broken bones nor cosmetic surgery were involved here, so the only basis for severe injury under the statutory definition is "disfiguring lacerations requiring multiple sutures." Kelley testified that the treating veterinarian told her, and she herself believed, that sutures would be needed, but Copper did not receive any sutures. N.T. at 12, 28-29. The trial court apparently did not rely directly on the veterinarian's out-of-court statement that sutures were required; it stated instead that even without sutures, the photographs of Copper's injuries and the witnesses' description of the attack show that it was obviously severe. R.R. at 55-56.

Here, the record does not indicate any reason the veterinarian did not administer sutures. There is no evidence that, as we contemplated in *Morgera*, Copper did not receive correct, adequate, or prompt treatment, or that Kelley

6

declined the treatment the veterinarian recommended. We must allow all reasonable inferences from the evidence in the Commonwealth's favor. *Williamson*, 616 A.2d at 981. But to be reasonable, any inference must, at a minimum, be "more likely than not to flow from the proved fact on which it is made to depend." *Commonwealth v. Wojdak*, 466 A.2d 991, 996 (Pa. 1983) (quoting *Turner v. United States,* 396 U.S. 398, 405 (1970)). Here, no potential explanation for the absence of sutures (such as late treatment, improper treatment, or declined treatment) is more likely than the possibility we contemplated in *Morgera*: that sutures were not, in fact, necessary. Notwithstanding the graphic photographs of Copper's injuries, which are disturbing, their need for sutures is not self-evident. Drawing the inference that sutures were required would be unwarranted without any evidence about why they were not used. *See Morgera*, 836 A.2d at 1073.

Further, the evidence and any permissible inferences must establish guilt "beyond a reasonable doubt." *Williamson*, 616 A.2d at 981. This "critical, yet amorphous" standard requires that the factfinder believe the evidence has "establish[ed] guilt to a 'near certitude.'" *Commonwealth v. Drummond*, 285 A.3d 625, 635, 640 (Pa. 2022) (quoting *Jackson v. Virginia,* 443 U.S. 307, 315 (1979)), *cert. denied sub nom. Drummond v. Pennsylvania*, 143 S. Ct. 1766 (2023). Because no sutures were used and the record does not otherwise show they were necessary, aside from an unexplored passing reference, the "testimony falls short of demonstrating that sutures were necessary to treat the . . . injuries" under the reasonable doubt standard. *See Morgera*, 836 A.2d at 1073. Absent such evidence, the trial court could not have found that sutures were necessary to treat Copper's injuries, and Subsection (1)(ii) cannot support Dougherty's conviction under Section 502-A, regardless whether the injuries were provoked.

7

We next consider whether a different prong of Subsection (1) was shown by sufficient evidence, which could independently establish the first element under Section 502-A(a). The only other potential basis for a conviction here is that the dogs "[a]ttacked a human being without provocation" under Subsection (1)(iii). Dougherty essentially argues the dogs attacked only Copper, not a human (here, Kelley). In the alternative, he argues any attack on Kelley was not "without provocation" because Kelley dropped Copper during the encounter and then tried to separate the dogs using a shovel, both of which could have provoked Dougherty's dogs. The Commonwealth responds that the dogs obviously attacked Kelley because they pursued her, and that her actions in trying to defend Copper did not provoke the attack. While addressing this issue, the Commonwealth suggests that we can affirm Dougherty's conviction for any reason clear on the record under any of the four prongs of Subsection (1), including that the pursuit amounted to an unprovoked "attack" on Kelley. *See* Commonwealth's Br. at 17.

"Attack" means "[t]he deliberate action of a dog, whether or not in response to a command by its owner, to bite, to seize with its teeth or to pursue any human, domestic animal, dog or cat." Section 102 of the Dog Law, 3 P.S. § 459-102.[5] Determining whether there was an "attack" on a human being has both a legal component (the statutory definition) and factual components (the precise conduct that occurred). It thus presents a mixed question of law and fact. *See Commonwealth v. Torsilieri*, 316 A.3d 77, 86 (Pa. 2024). When we review mixed questions, our deference to the factfinder increases when factual considerations predominate, and

---

[5] In his brief, Dougherty quotes a prior version of the statutory definition of "attack" that includes a specific intent element—that the attack must be "with the obvious intent to destroy, kill, wound, injure or otherwise harm the object of its action." But that definition was replaced by amendment long before the offense alleged here. *See* the Act of Dec. 11, 1996, P.L. 943, § 1 (emplacing current definition of "attack," without specific intent element).

it decreases when law predominates. *Id.* Here, the statutory definition is heavily weighted toward fact, so we will accord considerable deference to the trial court's decision on this issue. In a bench trial, the trial judge is free to believe all, some, or none of the evidence, and "the appellate court may not weigh the evidence [or] substitute its judgment for the fact-finder." *Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017).

Here, the dogs bit Copper, but they did not bite or seize Kelley. N.T. at 26. The only potential basis for an attack on Kelley, then, is pursuit. Critically, the parties both overlook the finding the trial court actually made as to Subsection (1)(iii): "I do not find the dogs attacked Kelley." N.T. at 55. The trial court explained that it viewed the attack as being on Copper, not Kelley, and that Kelley "was in the way [of the attack on Copper] and they weren't attacking [Kelley]." *Id.* The trial court credited Kelley's testimony that the dogs "pursued" Kelley and Copper as they ran the toward Kelley's home, *id.* at 13, 52, and credited Kern's testimony that the dogs initially ran toward and then "chase[d]" Kelley and Copper, *id.* at 37, 53. Thus, the evidence would apparently have supported a finding that the dogs attacked Kelley because they pursued her, along with Copper. But the trial court viewed and weighed the evidence differently, concluding that the pursuit was directed at Copper only. *Id.* at 55. That is the trial court's province. *Miller*, 172 A.3d. at 640.

With the finding the trial court actually made in hand, it becomes clear why we cannot accept the Commonwealth's invitation to affirm the conviction on another ground. "The 'right for any reason' doctrine allows an appellate court to affirm the trial court's decision on any basis that is supported by the record," regardless of the rationale for the decision below. *In re A.J.R.-H.*, 188 A.3d 1157,

9

1175-76 (Pa. 2018). But the doctrine "may not be used to affirm a decision when the appellate court must weigh evidence and engage in fact finding . . . to reach a legal conclusion." *Id.* at 1175. Here, to affirm the conviction based on Section 502-A(a)(1)(iii), we would need to re-weigh the testimony and find a new fact: that the dogs pursued, and thus attacked, Kelley, not just Copper. Although the testimony might support that finding, it also supports the trial court's finding that the pursuit was directed at Copper, not Kelley. We cannot affirm based on a factual finding directly opposite to the trial court's without intruding on its role as factfinder.

Further, affirming the conviction on another ground would, in these circumstances, likely violate the double jeopardy clauses of the United States[6] and Pennsylvania[7] constitutions. The protection against double jeopardy (which is coextensive under the two constitutions) attaches to an acquittal, and any acquittal thus becomes absolutely final and unassailable on appeal. *Commonwealth v. Ball*, 146 A.3d 755, 764 (Pa. 2016). An acquittal is any "ruling relating to the ultimate question of guilt or innocence," whether or not the ruling is expressly labeled an acquittal. *McElrath v. Georgia*, 601 U.S. 87, 96 (2024). This includes a "factual finding that necessarily establishes the criminal defendant's lack of criminal culpability." *Evans v. Michigan*, 568 U.S. 313, 319 (2013). Acquittals are unreviewable even if they are based on the factfinder's "mistaken understanding of what evidence would suffice to sustain a conviction" or its "misconstruction of the statute." *Id.* at 318.

Here, the trial court found as fact that the dogs did not attack a human being (Kelley). N.T. at 55. That factual finding conclusively established that Dougherty cannot be criminally liable based on Subsection (1)(iii), though he could

---

[6] U.S. CONST. amend. V.
[7] PA. CONST. art. I, § 10.

10

still be liable if the first element is shown via another of the four alternatives.[8]  Like sustaining a demurrer, that ruling meant that the evidence was insufficient to establish Dougherty's guilt as premised on an attack on a human.  *Cf. Smalis v. Pennsylvania*, 476 U.S. 140, 144 (1986) (reversing our Supreme Court and holding that sustaining preliminary objections in the nature of a demurer constituted acquittal).   That finding was the "functional equivalent" of an acquittal that terminated the initial jeopardy as to the attack-on-a-human prong of the first element, thus foreclosing any appeal on that issue.  *Id.* at 143.  To affirm Dougherty's conviction on that alternative basis now would force him and similarly situated defendants into a Hobson's choice: should he forfeit the finality of the trial court's no-attack finding so that he can appeal his conviction, or should he forfeit his appellate rights to keep that favorable finding intact?  Our double jeopardy caselaw teaches that we cannot place criminal defendants in that position.  *See Ball*, 146 A.3d at 766-68 (collecting cases).

Because the trial court erred in finding Subsection (1)(ii) satisfied, because its finding as to Subsection (1)(iii) cannot be disturbed on appeal, and because no other part of Subsection (1) was shown, we conclude that the Commonwealth failed to prove the first element of the offense of harboring a

---

[8] Section 502-A(a) is an example of a "divisible statute" because it "sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building or an automobile." *Descamps v. United States*, 570 U.S. 254, 257 (2013).  Subsection (1) provides four distinct, alternative means by which the prosecution can establish the first element of the offense of harboring a dangerous dog.

11

dangerous dog.[9]   Accordingly, we must reverse Dougherty's conviction under Section 502-A(a) of the Dog Law.


 

_____
MATTHEW S. WOLF, Judge

---

[9] Given this conclusion, and because each element of a criminal offense must be shown to sustain a conviction, we do not consider whether the second element (history and/or propensity) was proven.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania  :
                                 :
         v.            :    No. 1171 C.D. 2023
                                   :
Charles Dougherty,        :
                 Appellant   :

## O R D E R

AND NOW, this 14th day of November 2024, the April 21, 2023 Order of the Court of Common Pleas of Cumberland County is REVERSED in part, to the extent that it found Charles Dougherty (Dougherty) guilty of the summary offense of harboring a dangerous dog under Section 502-A(a) of the Dog Law,[1] and is AFFIRMED in part, to the extent it found Dougherty guilty of the summary offense relating to confinement of dogs under Section 305(a) of the Dog Law.[2]

—————————————————————
MATTHEW S. WOLF, Judge

---

[1] Act of December 7, 1982, P.L. 784, *as amended*, added by the Act of May 31, 1990, P.L. 2133, P.S. § 459-502-A.

[2] 3 P.S. § 459-305(a).